ATK Thikol Inc v. United States 2009-5036 . For the information of counsel in the last case to be argued, that's tech furniture against CBT, we will be taking a recess before that case to reconstitute the panel. So if anyone here is involved in that case, you will have a little extra time before we start that case after the third argument. Very well. Mr. Chandler. May it please the Court, the phrase required in the performance of the contract, in the performance of a contract, as used in the foreign cast provisions defining independent research and development, is intended to refer to all efforts necessary in order to complete contract requirements, regardless of whether those requirements are actually stated explicitly in the contract. That much is clear from both the plain language of those regulations and their regulatory history. In reaching the opposite conclusion, the Court of Federal Claims erred in both ignoring the plain language of those regulations and in misinterpreting the regulatory history. And for that reason, we respectfully request that the Court reverse the decision of the Court of Federal Claims and remain with instructions to enter judgment in favor of the government. But isn't all efforts necessary, an awfully broad formulation that would sweep in, for what's normally considered regular G&A, in which you just have a secretary that's there to answer the phone. You have to have the secretary there to answer the phone in order to get the call, in order to make the contract go. You don't mean to include that sort of thing as being within the contract-specific cost, do you? No, that's right, Your Honor. So, except with me that that kind of cost would be necessary to the contract, but wouldn't be within the scope of what you are asking for, then what do you think is perhaps a more precise formulation of what you think is really entailed in the body of costs that aren't indirect costs? Well, we're talking about costs that wouldn't be incurred but for the obligations in the contract, either implicit or explicit. So in your example, I mean, certainly the company would still have to have a secretary answering phones. But any costs that the company were to incur as a result of or directly because it has the obligations in the contract would be a contract cost and therefore not allowable. But if we used a but-for model, it seems to me in this case they were already in the process long before the contract with Mitsubishi. They were in the process of updating the motors. And so would your test of but-for causation actually result in the outcome that you want in this case? Well, Your Honor, it doesn't seem like it would to me. That's why I'm kind of surprised. I don't mind your articulation, but I'm just surprised by it. No, Your Honor. I mean, really what we're talking about are the steps that are necessary in order to complete the contract. So in this instance, I mean, it's clear that ATK was required to perform the development in order to complete the contract. But you agree. Hold on. But you agree, don't you, that they were already in the process? They had two years earlier started discussing updating the motors. Is that right? It's something they were contemplating before the MHI contract. That's correct. But it wasn't until the MHI contract that they actually were under an obligation to do that. Okay. But under an obligation to do it is different than I would think if that were true. And I'm not sure the contract is quite as precise as you're stating. But if that's true, but what if they were already doing it? Suppose that they were already updating the motors. In fact, they were 75 percent finished updating the motors when they entered into this contract and said, we're going to provide you with this updated motor that we have in process, plus we're going to make it, you know, compatible with the strap-on market. Under those circumstances, is that the but-for that you were looking for? Because they were doing it anyway. Well, I mean, it's not a strict but-for in the strict causation sense. I mean, what we're talking about are those costs that are necessary in order to complete the contract. So to use your example. Well, you've come back to the necessary in order to complete, and I think you've brought the secretary back in. See if you can formulate something that we both agreed, I think, that the secretary is not a cost specific to this contract. So if you can formulate the rule you're looking for in a way that leaves the secretary out, that would be helpful. Right. Okay. Well, what we're talking about, then, are costs that... How about are specifically identified with a single contract? Fair enough. So you accept the formulation specifically identified with a single contract? That's correct. And not multiple contracts or potential work done for others? Well, specifically identified as defined through the regulations, and the way you specifically identify a cost of the contract is whether or not it is required in the performance of that contract. So, but it has to be exclusively for that contract. It can't be for multiple contracts or other work that would benefit, for example, the government. No, it needn't be exclusively for that contract. I mean, the contractor may have in mind a broader application of, in this case, the development effort. But the fact that it's required by a particular contract makes that a contract cost. So the contractor is always free to postpone the point at which it makes itself subject to a contract to deliver on a particular effort or to perform a particular effort, and can continue to charge it as IR&D under those circumstances. But once it enters a contract that makes that performance necessary, then it's no longer able to charge. That becomes a direct cost of that contract. Well, suppose you've got two purchasers who are interested in, two commercial purchasers who are interested in the upgraded motor, and it just so happens that Mr. Bishy's contract is signed the day before the second purchaser's contract. Are you saying that all of the indirect costs that go into developing research and development for the upgrade are allocated to Mr. Bishy? Because at that point, it's all necessary to Mr. Bishy's purchase, and Mr. Bishy, at that moment in time, is the only contractor. I'm not sure I understand how you would allocate the costs, if at all. Well, if those contracts were entered only a day apart, let's say, or shortly, in a very close time. Okay, they're entered a year apart. Pardon? They're entered a year apart. Okay. Well, at the point where there are two contracts that necessitate the performance of that effort, then it would be a cost of both of those contracts. Allocated according to some form of... To the general cast principles, that's right. But even though it is anticipated that there will be additional contracts, but they aren't until the moment that they're signed, all the R&D gets loaded onto the first contract, is that right? All the R&D that is performed, or all the development effort that is performed while that contract is in place. And so, if all of the research and development effort is performed prior to the execution of the first contract, then that's all IR&D. Well, I want to be the second contractor. Well, that, I mean, in that instance, it doesn't really help you, right? Because you're still in the circumstance where, if the development effort is continuing... No. Let's assume the development effort is... It takes a year to develop this upgrade, and Mitsubishi comes in. It has to pay, I take it your position, is the entire load for that year's worth of development, even though it is anticipated by all parties that there will be further sales downstream. But the people that come in next, correct me if I'm wrong, the people that come in next don't pay any of the R&D. Well, that's entirely between the contractor and its customers. I mean, certainly, it's between ATK and MHI in this instance to work out who is going to pay for the development effort. There's nothing in the regulations that requires MHI or any purchaser to pay for the development effort. Well, okay, but it would be allocated to the first contract, and maybe it would mean that ATK would have to take its R&D out of that single contract, but it would be allocated to that contract as you see it, right? That's correct. Development effort that occurred while that contract was in place would be direct charge to that contract. Is this what they do, or what they should do, if the government is the first purchaser and Mitsubishi comes along a year later as the second purchaser, would the government be required to stand all of the development costs? That's right. I mean, the provision applies. Is this what the practice is? I'm aware that there are some instances where the government has acquiesced in the treatment that ATK is arguing, but the government has never pushed for that treatment, so I think there is a diversity in the way this is treated across the government. But certainly, the government is arguing in favor of a rule that would include implicit expenses and would anticipate applying that rule government-wide, even where the government is the first purchaser, even where the government has a contract while development effort is continuing. And ultimately, it is that way because that's what the regulations say. The regulations say, required in the performance of the contract. And one of the things that the Court of Federal Claims didn't do was take account of that language, in the performance of. The Court basically read that out of the relevant regulations. And as the Newport News Court noted, that phrase really is the key phrase in that provision. That is what indicates the drafter's intent to include that effort which is necessary in order to complete the contract. Now, the drafters could have taken several different approaches in drafting that language. Certainly, they could have said, required in the specific provisions of the contract, something similar to what interpretation wants. They didn't choose that formulation. They could have chosen a formulation that read, required by a contract. You said interpretation one. You're talking about 402 interpretation one? That's correct. Yeah. Okay. They could have chosen a middle ground. They could have chosen something that the language could have read, required by a contract, which in that case still, we believe, would include implicit costs. But at least there would be a more arguable basis. But in this instance, the drafters chose the phrase, required in the performance of the contract, effectively foreclosing ATK's reading of these regulations. But they rejected the required in support of a contract language, right? So how does your proposed interpretation of the current language differ from what interpretation we would give if the FAR had the in support of language in it? Because the in support of language arguably includes the secretary that Judge Bryson was talking about earlier, and that was industry's concern at the time. But the problem, I guess, that I'm having is so does your implicit language. And I'm just having difficulty getting you to articulate a test that doesn't include the secretary because explicit and implicitly would include the secretary as well. So I don't know how to say explicitly and implicitly except carve out the secretary. There's a lot of stuff that would be carved out, the secretary turning on the lights in the morning, you know, having a place to work or all these things, and I don't know how to craft a rule that would give you what you're looking for but not encapsulate all that other stuff. Well, I mean, clearly, you know, the secretary turning on the lights was not required by the contract. But it's implicitly necessary in order to perform under the contract. Right, but we're talking about our costs that are implicitly required by the contract. But there's no, there's no. Well, required in the performance of the contract, and you say that means implicitly required. That's mighty broad, it seems to me, your reading of required in the performance of the contract. Unless you really do mean it's a but-for test in which if the contract were not in place, those costs would not be incurred. And if it's the latter, then I think that's pretty close to, if not identical, to the test that your opposing counsel are urging, at least one formulation of that test. Right. I mean, ultimately, it is a question of applying, you know, the general four principles of allocability as well. And, you know, I think that's what guides the allocation of the secretary expense to the general administrative expense pool, whereas this is a unique expense that is addressed directly in CAS 420. Okay. Well, we've questioned you heavily, so we'll restore your full rebuttal time. Thank you. Let's hear from Mr. Lemer. May it please the Court. Thomas Lemer for ATK, Thiokol, Inc. Good morning. To follow up on the conversations you were just having with counsel, ATK's position in this case is the way the requirements are written is that the test is, does the contract specifically pay for it, or does it specifically require the work? And the reason for that is, stepping back and looking at what we view as the basic construct here, is the cost we're talking about is research and development cost. And when you look at the regulations, the regulations say that those costs are intended to develop contracts. The purpose of those costs is to develop and result in contracts to benefit the business of the company. I am a little confused by exactly what test you want us to apply, because at some points in your brief you refer to a test that sounds a lot like the one that you've just articulated and is a intent of the parties test, as the CFC said. But at another point, several other points, you refer to specifically the cost as being included in direct or not included in indirect costs. If the contract either specifically requires the effort, pays for the effort, or, importantly, there is no reasonably foreseeable benefit to more than one cost objective. It sounds like an objective standard that goes beyond the scope of what you were just referring to. Excuse me. Can you help me out as to whether those are different tests or whether it's the same test? It is the same test, and it comes from the fact of research and development costs are viewed in the regulations as having an inherently broad benefit. Multiple contracts benefit the contractor's business. So the threshold question is when you are undertaking an effort, what is the contractor intending with this effort? Let's assume the contract specifically seeks to exclude R&D costs to the greatest extent possible. So we know what the party's intent is, which is they don't want this included in the contract. Why doesn't Part C then come into play and require us to ask that notwithstanding the party's intent, we still believe that there's a reasonably foreseeable benefit or not? Why isn't that a separate inquiry? It is, Your Honor, and the reason that that inquiry is there is because of the basic construct of what is an R&D cost. You start by saying, I have an R&D cost that is intended to have multiple benefits. And so the first threshold question is, is the intent for multiple benefit? If the answer is yes, then you look at how CAS 420 is written. It says, generally speaking, it is multiple benefits except when it's required in the performance of a contract. Well, I'm having trouble seeing how that would be discernible from a contract. If you and I enter a contract, we're not all that concerned, presumably, with what other benefits there may or may not be to the costs that are going to be part of our contract. So we may just say, okay, here's the contract. You make this product, and I'll pay for it. Now, if it turns out that the product doesn't have any reasonably foreseeable benefits downstream to other contracts, doesn't that make those costs direct costs, not indirect costs? I would agree with that, Your Honor. And that isn't part of contract interpretation, right? I would agree with that. And it isn't part of the intent of the parties, right? That is correct. It is the intent of the contractor who's incurring the costs. And under the government cost accounting standards, the intent of the contractor incurring costs is very important because it is the contractor who's chosen to incur the costs, and the question becomes, why did the contractor choose to incur these costs? And Your Honor's question goes to the concept of manipulation that the government argues a lot in their brief, that the standard that ADK says is a proper standard will result in manipulation by contractors. It doesn't because if a contractor goes to the buyer in the same manner you were just talking about and they negotiate the contract to exclude development work, the cost of that effort is not R&D that's an indirect cost unless there's a multiple benefit. So I, the contractor, if someone approaches me and says, design this pen that I'm holding, and I say I'm not going to include the design of this pen in the contract, I'm simply going to sell you a completed product, the question then becomes the cost that I incur in designing this pen, what is it? If there is a reasonable expectation of multiple benefit to that design because I believe reasonably that I'm going to sell this pen to you and to you and to you, then that is a broad multiple benefit that underlies IR&D, and it makes it direct. Well, that seems to me, the way you're describing it, it seems to me that C of your A, B, and C ends up being much more important than the A and B. Isn't it? It's the threshold question. Right. Now let me put it in concrete terms and keeping in mind that you all do this every day and you understand how this all works, so for us it's a little bit difficult since we don't see this every day. If my example is not responsive to a real-world situation, then you fix it for me. But suppose that we have the following situation, that Thiokol decides to do a little freelancing and get out into a different market and they just decide to make some motorcycle engines, let's say, and they've had contact with Harley-Davidson. Harley-Davidson is very interested in buying 10,000 motorcycle engines and so they do a lot of research and development. They enter a contract and they sell 10,000 motorcycle engines to Harley-Davidson. Now, if someone else, if Kawasaki should come along, they'd be happy to accommodate them by selling some more, but Kawasaki hasn't come along yet and they're not running out after other contracts. The government isn't interested in buying any motorcycle engines, so they have one contract. Presumably, all those R&D would be direct cost, right? The answer is it depends. If ATK looked at the market and said that there are multiple potential buyers here, there's Harley-Davidson, there's Kawasaki, there's Suzuki, and whoever else makes motorcycles would be interested in this effort that I'm going to take to design this motor. That is an R&D cost that is indirect because it has potential multiple benefits. That's the function of R&D, generate contracts. On the other hand... But presumably, just to add, just for clarification for me, that R&D cost would not be allocated to any government contract, I guess, because the government contracts would not be for motorcycle engines, right? That's not correct. Under the rules, the government says R&D that stimulates sales benefits this contractor that I give. So even if the stimulation of sales is stimulation of sales of an entirely non-government-related product, the government still pays a share of the R&D? That is correct because the rules say R&D is intended to make this business healthy so the government has a healthy business to deal with, and the government says I am willing to pay my fair share because the costs get allocated over all contracts, government and commercial. So the question then is what percentage of all contracts of the company are government contracts?  So let me make sure I understand this argument. If there is only one contract and there's no question this upgrade was performed in order to affect this contract, then it's required in the performance thereof and the government pays none of the research and development costs, correct? If it is required by that contract, that is correct because it's a direct cost. But there's two contracts. There's two that you enter into. Suddenly now the government pays the percentage of the research costs that corresponds to the percentage of contract business it does with the contractor because there are two contracts, both of which on their face appear to require the work, but because there's two, would the government suddenly pay? No, and here's why. The way the rules are written, if the cost is identified as an indirect research and development cost, it is recognized in the year you spend the money. So it doesn't make any difference what happens in subsequent years. And it is put into a pot of money that is spread over all your contracts in that year. So using Thiokol's case as an example, Thiokol said, I am going to upgrade this existing product because I think there's a marketplace out there for people to buy it. Based on their belief, based on objective information, that there was potential multiple benefit, Thiokol said this is an independent research and development cost. They allocated that across all of their contracts in the year that they spent the money. That's what the rules require. So the decision on how you charge these costs is made at the point in time that the costs are decided to be incurred. ATK said there is a market here, there's a potential multiple benefit here, it's IR&D, therefore I'll spread it out over all my contracts. So to go back to my motorcycle example, and picking up on Judge Moore's question, if at the point that the Harley-Davidson contract is entered and the R&D begins, and let's suppose all the R&D can be done in a single year just to make it easy. If Thiokol concludes, reasonably I guess would be required, that this is a product that might be saleable to one other customer, specifically Kawasaki, and plans to approach Kawasaki, but so far has no direct expression of interest, then suddenly the costs turn from direct into indirect costs, and they get allocated to the government, among others. In the regulatory context, I would say that the description of suddenly change is not the right one. Well, no, that's my characterization, but whether you say suddenly or whether you say magically, or whether you say subtly, does the change occur? It does, but the point I'm trying to make, Your Honor, is not to pick on your specific words, but there's a fundamental concept here that's built into the regulations, and that is R&D costs are considered to have a broad benefit, and the way the rule is written is that broad benefit, or a presumption of a broad benefit, or however you want to phrase it, is rebutted only when it's required in the performance of a contract. So these costs begin with the presumption, research and development costs begin with a presumption that they're undertaken for a broad benefit, and that's why the rule says they are indirect costs except when required in the performance of a contract. And your definition of required in the performance of a contract is exactly what? It is that the contract scope of work requires the contractor to perform the specific research and development work, or if there's nothing in the scope of work that requires it, you can look at the pricing, and the pricing includes payment for doing that work. Somehow I don't see that definition as incorporating what I understood to be the underlying theme of the distinction you're trying to draw, which is that it has to be exclusively for that contract in order for it to be direct, and if it isn't exclusively for that contract, it's indirect. These costs are inherently broad benefit costs. Right, but we're asking the question, when do those costs cease to be broad? Those costs cease to be broad when a contract says, you, contractor, will perform this effort, or I will pay you for it. All right, but even if the contract doesn't explicitly say that, as I think we agreed earlier, there is a subset of cases in which it's clear that that's all that the costs are being incurred for, is that one contract. If that is the circumstance, that the only benefit, the only reason you incurred these costs relate to this contract, my Harley-Davidson contract, then it is a direct cost to that contract. All right, and with the Harley-Davidson example in mind, then once again, how would you define required in the performance of a contract? If Harley-Davidson came to ATK and said, we want to buy a motor that has 300 horsepower in it, they write a contract, and it says that ATK will design and develop a motor that has 300 horsepower and the price is X, that's required in the performance of the contract. Okay, I think that what Judge Bryson is trying to get at is, we all understand that if the contract explicitly requires it, but I think that what we're suggesting is there's a subset of cases which we think that even you acknowledge where it's not explicit in the contract and we're looking for a way to frame a test to capture only those cases from you. The way that I would describe it would be, the reason that I incur a cost is simply for that one contract. But if I incur a cost because I see a market that I anticipate having multiple contracts, I am not incurring that cost specifically for that contract. I'm incurring that cost for the broad benefit. Why is that not the case here? By the use of the word, the upgraded motor, is what is being purchased. Why isn't that sufficient? You don't have to spell out exactly what it is, do you? Your Honor, I believe I'm about out of time. The contract uses the term upgraded motor to describe the product that is being purchased. Upgraded can mean something else. It can mean it's got to be upgraded before it satisfies the contract. That is true. And this gets to a fundamental point of, and it goes back to some early questions to government counsel, which is, where do you draw the line if you don't draw the line as ATK says you draw it? ATK had to have facilities to make this motor. Those facilities, the cost of those facilities, are not direct costs to this contract. But they're just as necessary to produce the product as was the upgrade of the product. Because they expected to sell to others, is that right? Correct. They made an investment to produce this product. And that would be the controlling factor, is the expectation to sell the product to others. That is the threshold factor consideration determined here. What is the expectation when I decide, I the contractor, decide to incur these costs? Is there a multiple benefit that I reasonably foresee? And if the answer to that is yes. What if in the motorcycle situation, you had a certain horsepower in a motor before, and the contract called for you to upgrade it from 250 to 300 horsepower? Now, would that be enough to make it a direct cost? If the only reason that I did that was that requirement from that particular purchaser to have that horsepower, and I performed that effort. Now, you expected it to sell the more horsepower engine to other companies. That has the broad benefit of research and development. That's my intent. I'm developing a product. I'm trying to get at what language in a contract would indicate that you're doing this work for this specific contract. It doesn't seem to me that it has to be explicitly a cost. There would be language that just says upgrade. There would have to be language in there that says you will do the upgrade. ATK's contract is different. ATK simply said, I'm selling you this product, and I'm defining this product as an upgraded Castor 4AXL motor. But the contract nowhere said that the upgrade was to be performed as part of the contract or indicated anywhere that the upgrade was required by the contract. But to follow up on Judge Archer's question, I thought that we had common ground on the question of assuming a contract that just says, I want the motor. It doesn't say, I want the upgrade or make any reference to R&D. If that's the only contract that ATK anticipates for that particular motor or that particular upgrade or that particular motorcycle engine, then it is now direct cost, right? Even though the contract doesn't say anything that would suggest any resolution of the cost issue. I would agree with that. Okay. Go ahead. I was going to say, to go back to the issue of the manipulation that the government argues, that objective standard of, is there a multiple reasonable expectation of a multiple benefit, precludes the manipulation that the government argues can happen. And then the follow-up question would be, if the question gets to litigation, as we have here, how does the finder of fact, whoever ends up with the question, decide whether there was an anticipation of greater benefit than the individual single contract? Contemporaneous files, documents generated by the contractor. In this case, there is evidence, it's undisputed in the record, that ATK put that motor out for sale to the marketplace. There were expressions of interest from multiple potential buyers. That is an objective set of facts. And do you understand the Court of Federal Claims to have made a finding on that question? Yes. On the question of whether there was an expectation of multiple buyers? Yes. That is right in the Court of Claims' decision. Okay. Very good. Well, we've run over. If you have nothing else, we'll hear. If there are no further questions, I'd ask you to affirm the lower court's decision. Thank you. Mr. Chairman? First of all, I do want to make clear that we're not suggesting that there aren't line-drawing issues that would have to occur on sort of the back end of a determination that something is required in the performance of the contract. Those kinds of line-drawing issues are the kinds of line-drawing issues that happen all the time among accountants. They're the kinds of things that advance agreements are struck with respect to, or that's the purpose of the disclosure statements to sort of set out where those lines are and to, in advance, establish whether the secretary is required in the performance of a particular contract or not. Those issues can be resolved the same way that they're always resolved. And I hasten to point out as well that ATK's approach comes with its own line-drawing problems. And actually, Judge Bryson, you pointed that out at the very end. There is this complicated balancing that has to occur as to whether or not a project or a development intends multiple benefits or multiple benefits are intended. And that's where both the CAS and the FAR attempted to strike the balance here. I mean, essentially, what the ASPR Committee did in 1971 is to say, okay, generally, where there are multiple benefits intended, then those costs can be spread out. But where you've entered a contract, that terminates that discussion. In other words, that is sort of conclusively a determination that there aren't multiple benefits. We're not going to look any further at whether or not there are multiple benefits because you actually have a contract in place. The contractor has ceased to accept the risk of not being able to find a purchaser for that. Judge Bryson, your hypothetical about the motorcycles, I think, points out the problem with ATK's analysis as well. And that is, as I think Mr. Lamer acknowledged implicitly, if you accept their reading, then the analysis turns entirely on whether or not you state in the contract whether design and development is required. So if, you know, in that same circumstance. I thought that in my last exchange with Mr. Lamer, we clarified that that wasn't required to be explicit in the contract, but what was required was for the expectation to be that the costs would be limited to a single contract in order for it to be direct. Well, you can have both of those things in a particular instance. I mean, if you have, let's say that the contractor, the motorcycle manufacturer, intended multiple benefits, intended to apply those benefits to sales to multiple customers. Then the analysis turns entirely, ATK's analysis turns entirely on how that first contract is structured while the development effort is going on. So if the contractor intends multiple benefits, but writes a contract that says that the contractor will develop a 300-horsepower motor and sell it to the buyer, then it's a direct cost of that contract. If the contractor drafts a contract that says the contractor will provide a 300-horsepower motor, then it's not a direct cost. It's an indirect cost under ATK's analysis. Well, it might be or it might not be if there's an, I don't know if you had said as a predicate that there were others out there, but if there weren't others out there, then it doesn't matter if the contract recites, whether or not the contract recites the R&D costs as part of the purchase, right? I believe under ATK's analysis it does. It turns entirely on whether or not it's actually spelled out in the contract. If there are no further questions from the Court, I respectfully request that the Court reverse the decision to defer federal claims. Very well. The case is submitted. We thank both counsel.